**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

AMANDA MAYER,

          Plaintiff,

v.                                          Case No:  2:15-cv-315-FtM-38CM

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.

_____

## OPINION AND ORDER

Plaintiff Amanda Mayer appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits, period of disability, and supplemental security income.  For the reasons discussed herein, the decision of the Commissioner is affirmed.

### I.    Issues on Appeal[1]

Plaintiff raises two issues on appeal: (1) whether the residual functional capacity ("RFC") finding of Administrative Law Judge ("ALJ") Larry J. Butler is supported by substantial evidence; and (2) whether the ALJ erred in failing to obtain a vocational expert ("VE").

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.,* 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."), *cited in Sanchez v. Comm'r of Soc. Sec.,* 507 F. App'x 855, 856 n.1 (11th Cir. 2013).

### II.    Procedural History and Summary of the ALJ's Decision

Plaintiff protectively filed an application for disability insurance benefits, a period of disability, and supplemental security insurance on November 15, 2010. Tr. 138, 142. The Social Security Administration denied her claim initially on May 6, 2011 and upon reconsideration on July 14, 2011. Tr. 92, 98, 107, 110. Plaintiff requested and received a hearing before ALJ Larry J. Butler on February 11, 2013, during which she was represented by an attorney. Tr. 40-77. Plaintiff testified at the administrative hearing. *Id.*

The ALJ issued an unfavorable decision on January 6, 2014. Tr. 21-32. Initially, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act on June 30, 2012. Tr. 23. At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since January 1, 2008, the alleged onset date. *Id.* At step two, the ALJ determined that Plaintiff has the following severe impairments: status post carcinoma of the thyroid; a history of Keinbock [sic][2] syndrome of the right wrist; left wrist and thumb pain; and arthralgia. *Id.* At step three, the ALJ concluded that Plaintiff "[does] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 26.

Taking into account the effects from all of Plaintiff's impairments, the ALJ determined that Plaintiff has the RFC to:

---

[2] As defined by Plaintiff using the proper spelling, "Kienböck's disease is a condition where the blood supply to one of the small bones in the wrist, the lunate, is interrupted." Doc. 19 at 2. *See* http://www.assh.org/handcare/hand-arm-conditions/kienbocks-disease.

> perform the full range of light work as defined in 20 CFR 404.1567(b)
> and 416.967(b).  [Plaintiff] is able to occasionally lift/carry 20 pounds,
> frequently lift/carry 10 pounds, stand/walk about 6 hours in an 8-hour
> workday, sit about 6 hours in an 8-hour workday, and has unlimited
> ability to push and pull including operation of hand and/or foot controls.
> [Plaintiff] has a mild restriction with use of the wrists but can still
> frequently use the wrists to perform manipulative actions such as
> reaching in all directions, gross and fine manipulation and feeling.

*Id.* The ALJ found that Plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence and the limiting effects of the symptoms were not fully credible. Tr. 27.  At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  Tr. 31.  At step five, however, the ALJ determined that in "[c]onsidering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform. . . ." Tr. 32.  Thus, the ALJ found that Plaintiff is not disabled and denied her claim.  *Id.*

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on April 20, 2015.  Tr. 1-3.  Accordingly, the January 6, 2014 decision is the final decision of the Commissioner.  Plaintiff filed an appeal in this Court on May 21, 2015.  Doc. 1.

## III.   Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.  20 C.F.R. § 404.1505(a).  The

Commissioner has established a five-step sequential analysis for evaluating a claim of disability. *See* 20 C.F.R. § 404.1520. The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011)). The claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206,

1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit recently has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina v. Commissioner*, 606 F. App'x 520, 525 (11th Cir. 2015) (citing *Grant v. Richardson*, 445 F.2d 656 (5th Cir.1971)).

IV. **Discussion**

        *a. Whether the ALJ's RFC finding is supported by substantial evidence*

Plaintiff first contends that substantial evidence does not support the ALJ's RFC finding that Plaintiff's mental limitations were non-severe impairments, and

thus the RFC erroneously has no non-exertional mental limitations. Doc. 19 at 16. She argues it is unclear what weight, if any, the ALJ gave to the opinions of licensed psychologist Dr. Cheryl Kasprzak and instead relied mostly on the conclusions of the two non-examining state agency consultants, neither of whom reviewed the records from Plaintiff's treating psychiatrist. *Id.* at 16-17.

Plaintiff further argues that the ALJ failed to consider the effects of Plaintiff's complaints of pain on the RFC, the ALJ wrongly found that Plaintiff's surgery was successful, and the ALJ minimized Plaintiff's difficulties performing fine and gross manipulation and reaching. Doc. 19 at 17. Plaintiff states that pain can be disabling even when objective evidence does not support the allegedly disabling level of pain. *Id.* Further, her extensive treatment with a pain management physician and rheumatologist contradicts the ALJ's finding that surgery was successful, and the records establish significant difficulties using her hands. *Id.*

In response, the Commissioner argues that the ALJ's determination of Plaintiff's RFC was supported by substantial evidence. Doc. 20 at 3, 11. The Commissioner states that there is a lack of medical records to support a finding of severity with regard to the alleged mental impairments. *Id.* at 5. Additionally, the Commissioner states that the ALJ properly assessed the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine that Plaintiff's complaints about pain, surgery, and difficulty using her hands were not entirely credible. *Id.* at 11-12.

When determining how much weight to afford an opinion, the ALJ considers whether there is an examining or treatment relationship and the nature and extent

thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion.   20 C.F.R. § 404.1527(c)(1)-(6).   Findings of fact made by state agency medical and psychological consultants as to the nature and severity of a claimant's impairments must be treated as expert opinion evidence of nonexamining sources by the ALJ; but the ultimate opinions as to whether a claimant is disabled, the severity of a claimant's impairments, the claimant's RFC and the application of vocational factors are exclusively reserved to the Commissioner.   SSR 96-6p; 20 C.F.R. § 404.1527(d)(1)-(2).   Unless a treating source's opinion is given controlling weight, the ALJ must explain the weight given to the opinions of other consultants, doctors or medical specialists.   20 C.F.R. § 404.1527(e)(2)(ii); *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 877 (11th Cir. 2006).

In this case, the ALJ determined Plaintiff's RFC by taking into account Plaintiff's testimony regarding her education, work experience, and daily activities. Tr. 27.   The ALJ considered Plaintiff's medical records from 2007 through 2013 and discussed them in detail.   Tr. 27-30.   In terms of Plaintiff's mental impairments, physical impairments and pain, the ALJ found that objective evidence did not support her allegations of the severity of the pain and the degree of limitation she alleged. Tr. 30-31.   This was proper for the ALJ to do.   *See* 20 C.F.R. § 404.1529(c)(2).

i.   *Non-severe mental impairments*

At the second step in the sequential evaluation process, the ALJ determines whether the claimant has a severe impairment.   20 C.F.R. § 404.1520(a)(4)(ii). Plaintiff bears the burden of establishing that her impairments are severe.   *Bowen,* 482 U.S. at 146 n.5.   A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to do basic work activities.   20 C.F.R. § 404.1520(c).   "A non-severe impairment is a slight abnormality which has such a minimal effect on the individual that it could not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."   *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984). "The ALJ must consider every impairment alleged."   *Gibson v. Heckler,* 779 F.2d 619, 623 (11th Cir. 1986).   When determining a claimant's RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions," not just those determined to be severe.   20 C.F.R. § 404.1545(a)(2); SSR 96-8p.   The ALJ is required to consider the combined effects of a claimant's alleged impairments and make specific, well-articulated findings as to the effect of the impairments and whether they result in disability.   *Walker v. Bowen,* 826 F.2d 996, 1001 (11th Cir. 1987).

Here, at step two, the ALJ considered the four broad functional areas (the "paragraph B criteria") set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 C.F.R., Part 404, Subpart P, Appendix 1) to determine that Plaintiff's medically determinable mental impairments of anxiety disorder and affective disorder do not cause more than

minimal limitations in Plaintiff's ability to perform basic mental work activities and are therefore non-severe.  Tr. 24.  The ALJ reviewed the medical evidence discussed herein (including Dr. Kasprzak's February 7, 2011 evaluation) and questioned Plaintiff extensively at her February 11, 2013 administrative hearing to establish what limitations exist in each functional area contained in the paragraph B criteria. Tr. 25-27.  The first functional area is activities of daily living.  Tr. 25.  According to Dr. Kasprzak's evaluation records, Plaintiff showers and dresses daily without assistance, cooks and feeds herself simple meals, and is able to do a variety of household chores.  Tr. 585.  At the hearing, Plaintiff testified that she is able to dress herself, make simple meals, and do certain household chores with some assistance. Tr. 70.  Therefore, the ALJ found that Plaintiff has only mild limitations in this area. Tr. 25.

The second functional area is social functioning.  Tr. 26.  The ALJ found that Plaintiff has no limitation in this area as she is in a romantic relationship and participates in activities such as camping with her friends twice a month.  *Id.*  The next functional area is concentration, persistence, or pace.  *Id.*  Dr. Kasprzak's mental status examination reported that Plaintiff's immediate memory was mixed, her recent memory was within normal limits, her remote memory was adequate, her attention and concentration were adequate, and she was able to follow written and spoken instructions.  Tr. 585.  Therefore, the ALJ determined that Plaintiff has mild limitations in this area.  Tr. 26.  The fourth and final functional area is episodes of decompensation.  *Id.*  In reviewing the medical evidence, the ALJ determined that

Plaintiff had experienced no episodes of decompensation.  *Id.*  The ALJ noted that the RFC assessment reflects the degree of limitation that was found in the "paragraph B" mental function analysis.  *Id.*

Although the ALJ found that Plaintiff's mental impairments were non-severe, the ALJ found that Plaintiff suffered from severe impairments (Tr. 23) and continued through the sequential evaluation to step five.  Tr. 26-32.  The Eleventh Circuit has noted that the finding of *any* severe impairment is enough to satisfy step two, "because once the ALJ proceeds beyond step two, he is required to consider the claimant's entire medical condition, including impairments the ALJ determined were not severe."  *Burgin v. Comm'r of Soc. Sec.,* 420 F. App'x 901, 902 (11th Cir. 2011). Thus, even assuming the ALJ erred when he concluded that Plaintiff's mental impairments were non-severe, that error was harmless, because the ALJ considered all of her impairments, including those she deemed non-severe, when determining Plaintiff's RFC.

### ii.    Non-exertional mental limitations in the RFC

Plaintiff states that substantial evidence does not support the ALJ's finding in the RFC that Plaintiff has no non-exertional mental limitations.  Doc. 19 at 16. Specifically, Plaintiff argues that despite Dr. Kasprzak's examinations revealing memory abnormalities, diagnosis of panic disorder without agoraphobia, depressive disorder not otherwise specified, obsessive compulsive disorder, a Global Assessment of Functioning ("GAF") score of 52, and a prognosis that Plaintiff was "guarded for gainful employment," the ALJ found that Plaintiff's depressive and anxiety disorders

were non-severe impairments that would "clearly not be expected to interfere with [Plaintiff's] ability to work." Doc. 19 at 16. The Commissioner responds that the ALJ properly considered Dr. Kasprzak's notes, and Dr. Kasprzak's findings provide substantial evidence to support the ALJ's finding that Plaintiff's mental impairments were not severe. Doc. 20 at 9. Additionally, the Commissioner states that the ALJ also properly considered and relied upon the opinions of Dr. Holmes and Dr. Grubbs. *Id.* at 10.

When an impairment does not meet or equal a listed impairment at step three, as in this case, the ALJ will proceed to step four to assess and make a finding regarding the claimant's RFC based upon all the relevant medical and other evidence in the record. 20 C.F.R. § 404.1520(e). Here, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." Tr. 26. The ALJ then proceeded to assess and make a finding regarding the claimant's RFC. Tr. 26-31. The RFC is the most that a claimant can do despite his limitations. *See* 20 C.F.R. § 404.1545(a)(1); *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence and medical source statements. *Id.* At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). Furthermore, the claimant's age, education, work experience and whether he can return to past

relevant work are considered in determining his RFC.  *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)).

After evaluating the medical records discussed below, the ALJ noted there was a lack of evidence to support a finding that Plaintiff's non-severe mental impairments caused non-exertional limitations in the RFC.  Tr. 24.  On May 20, 2008, at an appointment for her right wrist pain, Plaintiff denied symptoms of depression and anxiety.  Tr. 348.  Again on May 1, 2009, during a prenatal visit, Plaintiff had no depression present, and her mental status was alert.  Tr. 440.  At various doctors' visits on August 26, 2010, September 21, 2010, and November 10, 2010, Plaintiff had a normal affect and mood with no anxiety or depression present.  Tr. 449, 563, 567. The first mention of mental limitations in the record appears to be on November 23, 2010, when Plaintiff saw ear, nose, and throat specialist Howard N. Barrow, M.D. for a post thyroidectomy follow-up and described symptoms of anxiety.  Tr. 527.  On December 7, 2010, Plaintiff saw Dolores Y. Delgado, M.D., a family practitioner, and reported feeling depressed and fatigued.  Tr. 569.

On February 7, 2011, Plaintiff submitted to a consultative examination with psychologist Dr. Kasprzak.  Tr. 583.  During the examination, Plaintiff told Dr. Kasprzak she was seeking disability because in 2002 she was diagnosed with depression, anxiety, and OCD by physician Susan Youngsman.  *Id.*  Additionally, Plaintiff stated that she is unable to work because she has experienced anxiety attacks since she was a teenager and experiences anxiety attacks two to three times weekly when she is not on medication.  *Id.*  Plaintiff reported that the scar tissue from

her thyroidectomy makes her feel like she is out of breath, leading to anxiety.  Tr. 583-84.  Plaintiff rated her current anxiety level at five on a ten-point scale and her depression at four.  Tr. 585.  Dr. Kasprzak reported that Plaintiff's mood and affect were within normal limits, she was oriented "x3,"[3] she had a cooperative attitude, her speech quality was within normal limits, and her intellectual ability was in the below average range.  Tr. 585-86.  The psychologist further noted that Plaintiff's immediate memory was mixed, her recent memory was within normal limits, her remote memory was adequate, and her attention, concentration, judgment, and insight were considered adequate.  *Id.*  Dr. Kasprzak diagnosed Plaintiff with panic disorder without agoraphobia, depressive disorder not otherwise specified, and obsessive-compulsive disorder.  Tr. 586.  She gave Plaintiff a GAF score of 52.  *Id.*

On February 17, 2011, Dorothy Holmes, Ph.D., a non-examining state agency consultant, opined that based on the medical evidence, Plaintiff's mental impairments do not interfere with her abilities of daily functioning, social functioning or concentration skills.  Tr. 600.  Dr. Holmes therefore found Plaintiff's mental impairments to be non-severe.  *Id.*  On April 19, 2011, family practitioner Rajan Sareen, M.D., diagnosed Plaintiff with anxiety after Plaintiff described ongoing problems with anxiety, feeling edgy, problems sleeping, and occasional palpitations.  Tr. 632.  On April 28, 2011, Adam M. Shuster, D.O., a pain management specialist,[4] reported that Plaintiff scored nine on the Beck Depression Inventory, which is "consistent with normal everyday ups and downs."  Tr. 642.  On July 1, 2011, George

---

[3] Oriented to person, place, and time.  www.behavenet.com.
[4] www.healthgrades.com.

Grubbs, Psy. D., reviewed the medical evidence and supported Dr. Holmes' finding that Plaintiff's mental impairments are non-severe.  Tr. 657.

On April 16, 2012, Plaintiff underwent a psychiatric evaluation at Lee Mental Health Center.  Tr. 660.  Plaintiff complained that Prozac was not working anymore to relieve her anxiety.  *Id.*  The evaluation revealed that Plaintiff's judgment and insight were fair, and her mood and affect anxious.  Tr. 663.  Psychiatrist Mirian Ajo, M.D., increased Plaintiff's Prozac dosage and prescribed Vistaril and Trazodone.  Tr. 664.  Dr. Ajo diagnosed Plaintiff with acute reaction to stress.  Tr. 666.  On June 12, 2012, Plaintiff returned to Lee Mental Health Center to refill her Prozac and reported she was doing well.  Tr. 732.  As a result, psychiatrist Felix Nwokolo, M.D., continued her medications.  Tr. 733.  On September 5, 2012, Plaintiff told her psychiatrist, Paul Zislis, M.D., that her medications were helping with her depression and insomnia, but not with her anxiety.  Tr. 728.  As a result, Dr. Zislis increased Plaintiff's dosage of Trazodone, discontinued Vistaril, and started Plaintiff on Xanax.  Tr. 730.  On November 26, 2012, and again on November 29, 2012, Louis J. Scala, M.D., board certified in internal medicine and cardiology, reported that Plaintiff denied agitation, anxiety, confusion, and crying spells.  Tr. 771, 781.  On December 3, 2012, in a follow up appointment at Lee Mental Health Center, Plaintiff reported that her medications helped reduce her anxiety attacks.  Tr. 805.  Her mood was charted as "euthymic." Tr. 804.  On January 11, 2013, psychiatrist Rahul K. Challapalli, M.D., noted that Plaintiff had a normal mood and affect with normal behavior.  Tr. 837.

Based on the evidence in the record, the Court finds that there is substantial

evidence to support the ALJ's finding that Plaintiff's mental impairments are not severe and she has no non-exertional mental limitations.  The ALJ gave significant weight to Dr. Kasprzak's opinion and properly considered other objective medical evidence to determine that Plaintiff's mental limitations are non-severe.  Although Dr. Kasprzak opined that Plaintiff's immediate memory was mixed ("as she was able to state 7 digits forward and 3 digits backward") (Tr. 585), other records document a lack of complaint of problems and normal memory.  *See* Tr. 449, 563, 663, 714, 728, 803, 811, 866.  On February 16, 2011, Plaintiff was diagnosed with panic disorder without agoraphobia, depressive disorder not otherwise specified, and obsessive compulsive disorder.  Tr. 586.  However, as the ALJ stated in his explanation of the RFC, medications help Plaintiff tolerate her symptoms.  Tr. 27.  On September 5, 2012, Plaintiff reported that her medications were helping with depression and insomnia, but not with anxiety, so her medications were adjusted.  Tr. 728-730.  Two separate times in November, Plaintiff denied anxiety, confusion, and crying spells (Tr. 781, 771), and on December 3, 2012, her mood was reported as "euthymic."  Tr. 805.  On January 11, 2012, Plaintiff's psychiatrists noted a normal mood and affect with normal behavior.  Tr. 837.

Despite Plaintiff's contentions at her hearing that she still suffers from anxiety, there is substantial evidence that proves otherwise.  Plaintiff was given a GAF score of 52 on February 16, 2011.  Tr. 586.  GAF scores, however, are no longer endorsed for use in disability programs by the Commissioner.  *See Lacina,* 606 F. App'x at 527, *Diagnostic and Statistical Manual of Mental Disorders*, 5th Edition, 201

("*DSM-5*"). Even if GAF scores are an adequate diagnostic tool, Plaintiff's GAF score is irrelevant because assessment occurred prior to the addition of antidepressant medications and therapy. Tr. 584-85. Subsequent to the addition of medications and the start of therapy, Plaintiff's GAF scores improved to 65. Tr. 733. A GAF score of 61-70 is indicative of only some mild symptoms. *See* American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed. 2000, Text Rev.) (DSM-IV-TR).

Finally, Dr. Kasprzak gave Plaintiff a prognosis of "guarded for gainful employment". *Id.* Even though the ALJ did not mention this particular statement made by Dr. Kasprzak, the Court finds that this statement was properly discounted in light of subsequent mental health treatment notes showing improvement with medication. *See Newberry v. Comm'r, Soc. Sec. Admin.,* 572 F. App'x 671, 672 (11th Cir. 2014) (holding that "even if the ALJ erroneously failed to explicitly assign weight to and discuss every aspect of [the doctor's] opinion, this error was harmless because it is still clear that the ALJ's rejection of the portions of [the doctor's] opinion that are inconsistent with the ALJ's ultimate conclusion was based on substantial evidence.") The ALJ has a responsibility to consider all of the relevant evidence of the record; but there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision. 20 C.F.R. § 404.1545(a)(1); *Dyer*, 395 F.3d at 1211. In explaining the RFC, the ALJ stated that Plaintiff reported depression, anxiety, and OCD in addition to having crying spells and anxiety attacks. Tr. 27. The ALJ further stated that Plaintiff's medications help her tolerate her symptoms. *Id.* The Court finds that the

ALJ's decision is supported by substantial evidence from the medical records and the extensive questioning by the ALJ at Plaintiff's February 11, 2013 hearing.

### iii. *Pain, Success of Surgery, and Fine and Gross Manipulation and Reaching*

Plaintiff next argues that the ALJ failed to properly consider the effects of Plaintiff's complaints of severe, intractable wrist pain and wrongly found Plaintiff's right wrist surgery was successful in relieving her symptoms. Doc. 19 at 17. She further asserts that the ALJ minimized Plaintiff's difficulties in performing fine and gross manipulation and reaching. *Id.* The Commissioner responds that the ALJ partially credited Plaintiff's subjective complaints of wrist pain when he limited Plaintiff to a reduced range of light work. Doc. 20 at 11. The Commissioner also argues that objective medical evidence indicates that Plaintiff's surgery was successful, and Plaintiff's argument that the ALJ minimized Plaintiff's difficulties in reaching and manipulation is meritless. *Id.* at 14.

A claimant's complaints of pain are disabling if objective evidence establishes an underlying condition and either (1) objective evidence confirms the severity of the alleged pain arising from that condition or (2) the condition is of such severity that it can reasonably be expected to give rise to the alleged pain. *Foote v. Chater*, 67 F.3d at 1560-61. In evaluating Plaintiff's pain, the agency's regulations state that complaints of pain will not alone establish disability; medical signs or laboratory findings must show that there is a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). When evidence documents an impairment that could

reasonably be expected to produce the symptoms alleged by a claimant, the Commissioner then evaluates the intensity and persistence of the symptoms to determine how the symptoms limit the claimant's capacity for work. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929 (c)(1); *see Foote,* 67 F.3d 1553, 1561 (11th Cir. 1995).

When assessing the credibility of subjective complaints, such as pain or fatigue, an ALJ considers: (1) evidence of an underlying medical condition; and (2) objective medical evidence either (a) confirming the severity of alleged symptoms, or (b) indicating that the medical condition could be reasonably expected to cause symptoms as severe as alleged. *See* 20 C.F.R. § 404.1529, 416.929; *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002); *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir. 1991). The pain standard "is fully consistent with the Secretary's regulations." *Elam v. R.R. Ret. Bd.,* 921, F.2d 1210, 1215 (11th Cir. 1991). If the objective medical evidence does not confirm the severity of the alleged symptoms but indicates that the claimant's impairments could reasonably be expected to produce some degree of pain and other symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. § 404.1529(c)(1); *Wilson,* 284 F.3d at 1225-26; *Foote,* 67 F.3d at 1561. The ALJ compares the claimant's statements with the objective medical evidence, the claimant's daily activities, treatment and medications received, and other factors concerning limitations and restrictions the symptoms cause. *See* 20 C.F.R. § 404.1529(c). "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting

subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson,* 284 F.3d at 1225 (internal citations omitted).

Here, the ALJ evaluated Plaintiff's complaints of pain and determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. . . ." Tr. 27. As the Commissioner discussed in her brief, the ALJ questioned Plaintiff's credibility by noting that Plaintiff's complaints were inconsistent with evidence showing her right wrist surgery was generally successful, and Plaintiff underwent conservative treatment following surgery (with periods of no treatment at all). Tr. 30-31. The ALJ also relied upon the state agency experts' opinions and Plaintiff's daily activities. *Id.*

Medical records show satisfactory post-operative appearance after Plaintiff underwent right wrist surgery in 2007. Tr. 347, 350, 352. Additionally, after her surgery Plaintiff often rated the severity of her pain as only a four to five out of ten. Tr. 637, 644, 655, 752, 758, 761, 764, 767. Furthermore, examinations of both of Plaintiff's hands and wrists since the alleged onset date revealed normal findings with no more than slight limitations. Tr. 349, 491, 568, 571, 582, 604, 607, 623, 632, 639, 642, 694, 743, 746, 749, 755, 761, 823, 837, 928. Also, in February 2011, Plaintiff was observed to experience no difficulty in handling objects. Tr. 583.

The ALJ further explained his reasoning for questioning Plaintiff's credibility by noting the conservative treatment (with periods of no treatment) that Plaintiff

received following surgery.  Tr. 28-30.  Despite an alleged onset date of January 1, 2008, there appears to be only one pain complaint in 2008 (Tr. 348) and no pain complaints in 2009.  *See* generally, Tr. 1-936.  The Court therefore concludes that the ALJ properly found Plaintiff's mild objective treatment history and conservative care was inconsistent with her complaints of disabling pain and supports the ALJ's credibility assessment.  *See 20* C.F.R. §§ 404.1527(c)(4), 404.1529(c)(3)(v), 416.927(c)(4), 416.929(c)(3)(v); SSR 96-7p; *Dyer*, 395 F.3d at 1211 (finding that the claimant's mild treatment history supported the ALJ's decision.)

Additionally, the ALJ gave great weight to the opinion of state agency consultant, David Guttman, M.D., in assessing Plaintiff's credibility.  Tr. 31.  State agency consultant opinions can be given great weight if the evidence supports their opinions.  *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); SSR 96-6p.  Dr. Guttman reviewed the evidence in the record and corroborated the findings of single decision maker Melissa Humphries, who completed a Physical Residual Functional Capacity assessment, and found that Plaintiff could perform light work with no manipulative limitations.  Tr. 78-85, 658.  Therefore, the ALJ afforded Dr. Guttman's opinion great weight (Tr. 31),[5] and substantial evidence supports his finding that Plaintiff's

---

[5] The ALJ acknowledged that a single decision maker ("SDM") is not an "acceptable medical source and her opinion is not entitled to any weight or consideration." Tr. 31. The ALJ however, considered the case analysis report prepared by Dr. Guttman, as it was proper for him to do.  *Id.*; *see* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); SSR 96-6p.  Dr. Guttman reviewed and affirmed the SDM's findings after reviewing the record. Tr. 658. *See Warren v. Astrue*, 830 F. Supp.2d 1369, 1272-73 (rejecting a claim that ALJ erred by giving weight to the opinion of the SDM because a subsequent RFC assessment was performed by a medical consultant with "virtually indistinguishable findings"); *Patterson v. Astrue*, 2011 WL 1790192, *5 (M.D. Fla. 2011) (holding that "while [the SDM] was not a doctor, his opinion was subsequently concurred in by someone who is" and thus reversal was not warranted).

statements concerning the intensity, persistence, and limiting effects of her pain and other symptoms were not entirely credible.

Plaintiff's daily activities – personal care, caring for her young children, performing a wide range of household chores, and social activities – further support the ALJ's finding of Plaintiff's credibility. *See* 20 C.F.R. § 404.1529(c). The ALJ noted that although Plaintiff now claims that she can only perform these activities occasionally and with a great deal of pain, these self-reported difficulties were not supported by the objective medical evidence. Tr. 26-31.

Thus, even though the evidence establishes an underlying condition, there is neither objective evidence confirming the severity of the alleged pain arising from that condition nor is the condition of such a severity that it can reasonably be expected to give rise to the alleged pain. The Court finds that the ALJ articulated sufficient reasons for questioning Plaintiff's credibility, and substantial evidence supports the ALJ's credibility finding and his assessment of Plaintiff's RFC.

### b. *Whether the ALJ erred in failing to obtain a VE*

The ALJ determined that the Medical-Vocational Guidelines (the "guidelines" or "grids") support a finding that Plaintiff is not disabled. Tr. 31; *see* 20 C.F.R. pt. 404, subpt. P, app. 2. The ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. 32.

Plaintiff contends that the ALJ must obtain testimony from a VE, rather than rely exclusively on the vocational rule grid,[6] when a claimant has non-exertional limitations that significantly limit basic work skills.   Doc. 19 at 18.   The Commissioner argues that the ALJ was not required to obtain a VE to support his finding that Plaintiff was not disabled because the grids provided substantial evidence to support the ALJ's conclusion that Plaintiff could perform other work and was not disabled within the meaning of the Social Security Act.  Doc. 20 at 18.

When a claimant's vocational characteristics coincide with the factors of a rule in the grids, the existence of jobs in the national economy is established, and the claimant is considered not disabled.  *See* 20 C.F.R. §§ 404.1569, 404.1569a, 416.969, 416.969a, 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(b); *Heckler v. Campbell,* 461 U.S. 458, 461-462, 470 (1983); *Phillips*, 357 F.3d at 1242-43.  When a claimant has non-exertional limitations, the ALJ must determine if these limitations "significantly limit her basic work skills."  *Phillips*, 357 F.3d at 1243.  "Significantly limits basic work skills" is defined as "prohibit[ing] a claimant from performing a wide range of work at a given work level."  *Id.*  If the ALJ determines that the impairments significantly limit the claimant's basic work skills, then the ALJ should obtain testimony of a vocational expert and not rely exclusively on the grids.  *Id.*  If, however, an ALJ determines that the claimant's non-exertional limitations do not significantly limit her basic work skills at the work level, then the ALJ may rely on the grids to

---

[6] A table to provide a grid work to help determine disability in various situations, grids are used after the ALJ has determined the claimant's (1) exertion level, (2) age, (3) education, and (4) work experience.  *See* 20 C.F.R. §§ 404.1569, 416.969; *see also* 20 C.F.R. pt. 404, subpt. P, app. 2.

determine if the claimant is disabled. *Id.* Use of the grids alone constitutes substantial evidence sufficient to uphold the decision of the Secretary. *See Heckler,* 461 U.S. at 468.

Here, the ALJ evaluated the grids noting that section 202.21 of the guidelines directs a finding of not disabled for someone of Plaintiff's age, education, and work experience who can perform the full range of light work. Tr. 32. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, § 202.21. The ALJ then determined that Plaintiff's mild restriction of the use of her wrists would not significantly erode the occupational base encompassed by the grids and thus did not preclude her from performing a wide range of light work. Tr. 32. *See* SSR 85-15. Thus, the Court finds that the ALJ was not required to obtain a VE to support his finding that Plaintiff was not disabled. The grids provided substantial evidence to support the ALJ's conclusion that Plaintiff could perform other work and was not disabled within the meaning of the Social Security Act. *Heckler,* 461 U.S. at 468.

## V.    Conclusion

Upon review of the record, the undersigned concludes that the ALJ applied the proper legal standards, and his determination that Plaintiff is not disabled is supported by substantial evidence. Where, as here, the Commissioner's decision is supported by substantial evidence, the Court must affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the preponderance of the evidence is against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes*, 932 F.2d at 1358.

ACCORDINGLY, it is hereby

**ORDERED:**

1.      The decision of the Commissioner is **AFFIRMED**.

2.      The Clerk of Court is directed to enter judgment pursuant to sentence

four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 25th day of July, 2016.

CAROL MIRANDO
United States Magistrate Judge

Copies to:

Counsel of record